550 So.2d 797 (1989)
STATE of Louisiana, Appellee,
v.
Cleavon ANDERSON, Jr., Appellant.
No. 20839-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
Writ Denied January 19, 1990.
*798 Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., John L. Sheehan, Asst. Dist. Atty., Ruston, for appellee.
Before FRED W. JONES, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The defendant, Cleavon Anderson, Jr., having been indicted for second degree murder in the shooting death of Willie Dawson, and tried by jury, now appeals his conviction of the responsive verdict of manslaughter, a violation of LSA-R.S. 14:31, and his sentence to twelve years at hard labor. For the following reasons, we reverse the conviction, vacate the sentence and remand for a new trial for the offense of manslaughter.

FACTS
On December 11, 1987, the defendant, who had been drinking, went to the Happy Hour Club, a local Dubach, Louisiana, establishment for gambling and playing billiards. When the defendant entered the club, the victim, Willie Dawson, was running a dice game. Dawson placed approximately $40 on the table and called for someone to "cover his bet." The defendant placed a $100 bill on the table. Dawson threw the dice and lost. The defendant demanded his money. Dawson refused to give the defendant the money, explaining that the money belonged to the owner of the establishment, Avan Richard, Jr., and that Dawson had not been serious about making a bet. The defendant drew a pistol from his trousers and insisted that Dawson deliver the money. Richard stepped in, defused the impending dispute, and the defendant put away his gun.
The facts are in dispute as to what happened next. According to the defendant, he and his brother began walking toward *799 the door of the establishment in order to leave. According to the defendant, the victim walked around a pool table, met the defendant at the door and attacked him with a knife. The defendant's brother shouted at the victim, not to cut the defendant. At that time a struggle ensued and gunshots were fired. The defendant's testimony was corroborated by witnesses called by the state.
Other witnesses present at the shooting testified that the initial altercation over the bet had ended and the victim was headed for the door of the establishment in order to leave. The defendant walked around the pool table in the opposite direction and met Dawson at the door. A struggle ensued. The defendant fired one shot into the ceiling of the establishment and two shots into Dawson's back, killing him.
The defendant was arrested and charged with second degree murder. At trial, the defendant sought to show that he committed the killing in self-defense. Testimony at the trial was conflicting as to whether the defendant or the victim was the aggressor in the confrontation leading to the victim's death. John H. Williams and Jeff Anderson, brothers of the defendant, were present at the shooting. They testified that the victim had a pocket knife that he was attempting to open. Jeff Anderson told the victim not to cut his brother. Both men testified that they had been drinking prior to the shooting.
Prentiss Ross, another witness who was present at the shooting, testified that he observed the knife on the floor near the victim after the shooting. Ross picked the knife up but then replaced it before the police arrived.
Other witnesses to the shooting claimed that the defendant was the aggressor. Avan Richard, Jr., the owner of the establishment, testified that the victim was attempting to leave the club when he was confronted by the defendant. This version of the facts was also substantiated by other witnesses.
Steve Richard testified that the victim was struggling with the defendant to keep the defendant's gun up in the air but that the victim stumbled on a raised board in the floor and lost his grip on the defendant's hands. At that point, the defendant shot the victim. Several witnesses testified that the defendant fired a second shot into the victim's back after the victim had been initially hit and was falling to the floor.
Although originally charged with second degree murder, the jury found the defendant guilty of manslaughter. On September 16, 1989, the defendant was sentenced to serve twelve years at hard labor. The defendant has appealed his conviction and sentence arguing numerous assignments of error.

DANGEROUS CHARACTER OF THE VICTIM
In attempting to show his actions were justified and that he committed the killing in self-defense, the defendant sought to prove an overt act of aggression on the part of the victim at the time of the shooting and that, due to defendant's knowledge of the victim's dangerous character, the defendant reasonably believed he was in danger of losing his life or suffering great bodily harm.
The defendant contends that the trial court erred in preventing him from testifying about his knowledge of the victim's dangerous character and reputation for violence. He further claims that he should have been allowed to testify about his knowledge of specific acts of violence committed by the victim some ten years earlier. The defendant argues that because he claimed that the killing was done in self-defense, these questions were proper and the evidence should have been admitted.[1]
LSA-R.S. 15:482 provides:

*800 In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against the accused is not admissible.
The jurisprudence has interpreted LSA-R.S. 15:482 to mean that evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that the victim made a hostile demonstration or committed an overt act against the accused at the time of the incident of such character as to create in the mind of a reasonable person the belief that he is in imminent danger of losing his life or suffering great bodily harm. State v. Edwards, 420 So.2d 663 (La.1982); State v. Burton, 464 So.2d 421 (La.App. 1st Cir. 1985), writ denied. 468 So.2d 570 (La. 1985).
Once evidence of an overt act on the part of the victim has been presented, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger which would justify the conduct; and (2) to help determine who was the aggressor in the conflict. State v. Edwards, supra; State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985).
In order for evidence to be admissible to show the defendant's reasonable apprehension of danger, it must be shown that the defendant knew of the victim's prior acts of violence or reputation for violence at the time of the incident. If evidence is introduced to help determine who was the aggressor in the conflict, evidence of general reputation, not specific acts or personal opinion is admissible. State v. Johnson, 438 So.2d 1221 (La.App. 3rd Cir. 1983).
Evidence of the victim's prior hostile conduct may be introduced to show the accused's state of mind, if it is shown that the accused knew of the victim's prior threats or reputation at the time of the offense; evidence used to show the victim's character is not limited to general reputation, but may also include evidence of specific acts. State v. Boss, 353 So.2d 241 (La.1977).
When appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe upon the fact determination of the jury by disbelieving the defense testimony and thus denying the accused a defense permitted him by law. State v. Chaisson, 425 So.2d 745 (La.1983). State v. Hardeman, supra.
In the present case, there was testimony and evidence before the court tending to show an overt act on the part of the victim. The defendant and one of his brothers testified that the initial argument between the defendant and the victim was over. As the defendant attempted to leave with his brother, he was met by the victim at the door. According to the defendant, the victim came at him with a knife. Defendant's brother contends he told the victim not to cut the defendant and that, at that point, a struggle ensued between the victim and defendant and gunshots were fired. A partially opened knife was found by the victim's body and several witnesses testified that the victim was attempting to use the weapon on the defendant. The knife was identified as belonging to the victim.
Upon introducing evidence of the overt act and a hostile demonstration, the truth and validity of which were jury questions, the defendant was entitled to introduce evidence of the victim's dangerous character, as well as specific acts known to the defendant, which affected his state of mind and which the jury could consider in determining whether the defendant acted in self-defense. State v. Boss, supra.
Because appreciable evidence of an overt act was presented in this case, the trial court erred in not allowing the defendant to be questioned regarding his knowledge *801 of the victim's dangerous character and his knowledge of prior acts of violence committed by the victim some ten years earlier, all of which were offered to show the state of mind of the defendant.[2]
Additionally, we do not find that this ruling by the trial court and the exclusion of this evidence constitutes harmless error. To determine whether error exists, it must be determined whether there is a reasonable possibility the admission or exclusion of certain evidence, depending upon the case, might have contributed to the conviction. The appellate court must be able to declare that the error was harmless beyond a reasonable doubt. State v. Martin, 458 So.2d 454 (La.1984).
Since, in this case, the evidence of the victim's dangerous character was not admitted and the record does not clearly show what the witness would have revealed about the victim's character or what the defendant actually knew about the victim's character, we cannot say that placing this evidence before the jury would not have affected the result of the trial. See State v. Lee, 331 So.2d 455 (La. 1976).
This error by the trial court constituted a substantial curtailment of the defendant's statutory right to present such evidence. Therefore, we cannot say that the exclusion of this evidence was harmless beyond a reasonable doubt.
Accordingly, this error by the trial court constitutes reversible error and requires that we reverse the conviction, vacate the sentence and remand the case for a new trial. Because we reverse the defendant's conviction for the above stated reasons, we do not address the defendant's remaining assignments of error.[3]

CONCLUSION
Defendant's conviction is reversed, his sentence is vacated, and the case is remanded for a new trial for the offense of manslaughter.
REVERSED AND REMANDED FOR NEW TRIAL.
NOTES
[1] We further note that under the aggressor doctrine in LSA-R.S. 14:21, an aggressor cannot claim self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he has withdrawn and does not desire to continue the conflict. Whether the defendant was the aggressor, had not withdrawn from the conflict and was therefore not entitled to claim self-defense are matters to be decided by the trier of fact. State v. Collins, 306 So.2d 662 (La. 1975); State v. Ducote, 452 So.2d 1305 (La.App. 3rd Cir.1984).
[2] The prosecution objected to the admission of this testimony partially on the grounds of relevancy due to the fact that the victim's violent conduct had occurred some ten years prior to this incident. The trial court sustained the prosecution's relevancy objection. However, the remoteness in time of prior incidents should go to the weight of the evidence rather than to its admissibility. State v. Martin, 458 So.2d 454 (La.1984).
[3] Although not required to rule upon other assignments of error, we note possible error in the trial court's failure to instruct the jury on the defense of intoxication. Although the defendant did not give notice of his intention to urge intoxication as a defense as required by LSA-C. Cr.P. 726 and State v. Gipson, 427 So.2d 1293 (La.App. 2d Cir.1983), evidence of his intoxication was admitted without objection. Under those circumstances, the defendant may have been entitled to a jury instruction in conformity to the evidence which was before the jury.