616 So.2d 1300 (1993)
STATE of Louisiana, Appellee,
v.
James Henry GANTT, Appellant.
No. 24727-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*1303 Indigent Defender Office, by Richard E. Hiller, Shreveport, for appellant.
Paul J. Carmouche, Dist. Atty., Tommy J. Johnson, Mark Perkins, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, BROWN and STEWART, JJ.
STEWART, Judge.
Defendant, James Henry Gantt, was charged by bill of information with two counts of attempted second degree murder in violation of LSA-R.S. 14.27 and 14:30.1. Gantt was tried by jury who returned responsive verdicts of one count of aggravated battery and one count of attempted manslaughter. Gantt was sentenced to serve six years imprisonment at hard labor on each count with the sentences to run concurrently. For the reasons assigned below, we affirm the convictions and sentences.

FACTS
On the afternoon of March 9, 1991, James Gantt was driving home when he was flagged down on David Raines Road in Shreveport, La. by his brother-in-law, Michael Arkansas. At the time, Michael Arkansas and his brother Billy Ray Arkansas and several other members of their family were sitting on the porch in front of the home of their sisters, Barbara and Wanda James. After the defendant pulled over and stopped, Michael walked up to the driver's side door and began talking to him.
An argument ensued in which Michael accused the defendant of owing him money for work done on the home of defendant and defendant's wife, Cynthia, (Michael's sister). At some point during this argument, Michael opened the door of defendant's truck and climbed inside, striking the defendant. Although the defendant argued self defense at trial, Willie Thomas, a witness for the state who was the lone passenger in defendant's truck at the time, testified that Michael struck the defendant after the defendant pulled a gun out from under the seat of his truck.
Billy Ray and another relative, Kenny James, ran to pull Michael away and stop the fight. After Billy and Kenny pulled Michael away, the defendant exited the truck with a .357 revolver. He ordered the other two men to stand clear. When they refused, he shot Billy Arkansas.
After Billy fell as a result of this shot, the defendant shot Michael Arkansas. By this time Kenny James had run back toward *1304 the house. The defendant then walked up to Michael and shot him twice more as he lay on the ground. He then got in his truck and left.
Gantt subsequently turned himself into the authorities and turned over the weapon used in the shooting. He was arrested and charged with two counts of attempted second degree murder in violation of LSA-R.S. 14:27 and 14:30.1.
Gantt was convicted by jury on January 30, 1992, of the responsive charges of one count aggravated battery and one count of attempted manslaughter. On July 7, 1992, he was sentenced to six years imprisonment at hard labor on each count, the sentences to be served concurrently.
Gantt appeals[1] arguing that the trial court erred: (1) in refusing to permit him to introduce evidence of the dangerous and violent character of the alleged victims; (3) in admitting the results of the distance determination test; (5) in sentencing him to an excessive sentence; and (6) insufficiency of the evidence to convict.

DISCUSSION
Assignment of Error No. 1:
The Trial Court erred, after proof of an overt act against the defendant, in refusing to permit him to introduce evidence to establish the dangerous and violent character of the alleged victims.
Evidence of the victim's dangerous character or threats against the accused are relevant to self-defense because such evidence shows that the victim was the aggressor and that the defendant reasonably apprehended the danger. State v. Edwards, 420 So.2d 663 (La.1982); State v. Flowers, 574 So.2d 448 (La.App.2d Cir.1991), writ denied, 580 So.2d 666 (La.1992).
Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that at the time of the incident the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created in the mind of a reasonable person a belief that he was in immediate danger of losing his life or suffering great bodily harm. State v. Ducre, 596 So.2d 1372 (La.App. 1st Cir.1992), writ denied, 600 So.2d 637 (La.1992); State v. Jones, 451 So.2d 1181 (La.App. 1st Cir.1984).
Once evidence of an overt act by the victim is established, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who was the aggressor in the conflict. State v. Ducre, supra; State v. Edwards, supra.
In order for evidence to be admissible to show the defendant's reasonable apprehension of danger, it must be shown that the defendant knew of the victim's prior acts of violence or reputation for violence at the time of the incident. If evidence is introduced to help determine who was the aggressor in the conflict, evidence of general reputation, not specific acts or personal opinion is admissible. State v. Anderson, 550 So.2d 797 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1260 (La.1990).
Evidence of the victim's prior hostile conduct may be introduced to show the accused's state of mind, if it is shown that the accused knew of the victim's prior threats or reputation at the time of the offense; evidence used to show the victim's character is not limited to general reputation, but may also include evidence of specific acts. State v. Anderson, supra; State v. Boss, 353 So.2d 241 (La.1977).
In Anderson, 550 So.2d at 800, the court stated:
Upon introducing evidence of the overt act and a hostile demonstration, the truth and validity of which were jury questions, *1305 the defendant was entitled to introduce evidence of the victim's dangerous character, as well as specific acts known to the defendant, which affected his state of mind and which the jury could consider in determining whether the defendant acted in self-defense. State v. Boss, supra.
See also, State v. Johnson, 553 So.2d 865 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1992).
Most of the jurisprudence on this issue is located under former LSA-R.S. 15:482. R.S. 15:482 was repealed and reenacted as LSA-C.E. Art 404(A)(2). This article modified the law but does not appear to reject the prior jurisprudence requiring an overt act on the part of the victim in order to introduce evidence of the victim's character. State v. Ducre, supra. In fact, the article contains language to that effect. See LSA-C.E. Art. 404(A)(2) and Comment e to the article. See also, State v. Clark, 558 So.2d 665 (La.App. 1st Cir.1990), writ denied, 564 So.2d 317 (La.1990).
We note however, that in State v. Flowers, supra, this court expressed in dicta an apparently different view. Flowers was decided after the enactment of the Louisiana Code of Evidence. In Flowers, the defendant argued that the trial court erred by not allowing evidence of specific acts by the victim to be introduced into evidence. This court did not directly rule on the issue of character evidence, finding instead that the elicited testimony was irrelevant.
However, the court went on to state,
Even if the proffered testimony had been relevant, it would not satisfy the codal requirements for character evidence. Under C.Ev. art. 405, a person's character must usually be proved by reputation, not specific acts.... Article 405 does provide for the admission of specific instances of conduct, but only when a character trait is an essential element of a charge or defense, such as in a prosecution for defamation or in the defense of entrapment; ...
State v. Flowers, supra, 574 So.2d at 452 (emphasis added).
Our discussion in State v. Flowers, is inapplicable to the instant case because we were not called upon to consider the admissibility of specific acts of a victim's character pursuant to LSA-C.E. Art. 404.
Louisiana Code of Evidence Article 404 provides in part:
A. Character evidence generally.
Evidence of a person's character or a trait of his character, such as moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . . .
(2) Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of a crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familiar or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; ...
Louisiana Code of Evidence Article 405 provides in part:
A. Reputation. Except as provided in Article 412, in all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation only. On cross-examination of the character witness, inquiry is allowable into relevant specific instances of conduct.
B. Specific instances of conduct. In cases in which character or a trait of *1306 character of a person is an essential element of a charge, claim, or defense, such as in a prosecution for defamation or when there is a defense of entrapment, proof may also be made of specific instances of his conduct.
C. Foundation. Before a person may be permitted to testify to the reputation of another person, a foundation must be established that the witness is familiar with that reputation.
Because State v. Flowers, supra, does not mention Article 404 and does not directly contradict the earlier jurisprudence on this issue, the law under the code of evidence is essentially unchanged where character evidence of a victim is at issue. The showing of an overt act on the part of the victim entitles the defendant to introduce evidence of the victim's dangerous character, as well as specific acts known to the defendant, which affected his state of mind and which the jury could consider in determining whether the defendant acted in self defense.
Because an overt act was demonstrated on the part of the victims in the case sub judice, appellant should have been allowed to present evidence of the victims' character, including specific examples. The state acknowledges in its brief that the evidence may be "admissible in this instance" but that its admission constituted harmless error.
In the instant case, it was virtually conceded by the state that Gantt satisfied the overt act requirement. Gantt testified that Michael Arkansas attacked him first by grabbing and choking him through the window of Gantt's vehicle. Having established the overt act, defense counsel sought to introduce through Gantt and other witnesses their knowledge of specific acts of aggressive behavior on the part of Billy or Michael pursuant to LSA-C.E. Art. 404. Upon objection by the prosecution, the trial judge ruled that the defense had to proceed according to LSA-C.E. Art. 405 which limited any proof of character of the victim to reputation evidence and not evidence of specific acts. The trial court further held that State v. Edwards, supra cited by the defense was of limited applicability because it was a homicide case between a husband and wife, thus, not applicable to the instant situation which involved cousins. The trial judge concluded his ruling thusly:
Let me state for the record, the reason we're not going to go into them is that you have established indirectly these acts by being allowed for the defendant to go into his state of mind as to the reputation of the victim. So those acts have gotten in although not directly specifically in acts, but by allowing him to testify as to what his state of mind was and what his understanding of their general reputation in the community was. So I think it's in.
A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused. LSA-C.Cr.P. Art. 921. Error if made by the trial court, is not fatal unless the defendant demonstrates prejudice. State v. Humphrey, 412 So.2d 507 (La.1981); State v. Allen, 440 So.2d 1330 (La.1983); State v. Jackson, 545 So.2d 1228 (La.App. 2d Cir.1989), writ denied, 550 So.2d 634 (La.1989).
In State v. Gibson, 391 So.2d 421 (La.1980), the Louisiana Supreme Court adopted the "harmless error" test set forth by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as the test that adequately complies with both Federal and Louisiana law in assessing whether or not an error may be deemed to be harmless. State v. Westfall, 446 So.2d 1292 (La.App.2d Cir.1984), writ denied, 450 So.2d 957 (La.1984).
The Chapman test asks whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the conviction and requires that the reviewing court be able to declare a belief that the error was harmless beyond a reasonable doubt.
The burden of proving harmless error lies with the state. State v. Gibson, supra; State v. Westfall, supra.
*1307 The state contends that the jury took into consideration the overt acts of the victims as revealed by the lesser verdicts of aggravated battery and attempted manslaughter.
The state also argues that regardless of the character of the victims, the defendant went beyond the scope of self defense. This argument is supported by the number of witnesses who testified that the combatants were separated and the fight appeared to be over when the defendant shot the victims.
However, in State v. Anderson, supra, this court found a similar situation did not constitute harmless error. In that case, the defendant was indicted for second degree murder and claimed self defense. The jury returned a responsive verdict of guilty of manslaughter. At trial, the defendant attempted to introduce evidence of the victim's character but such testimony was not allowed by the trial court. This court reversed the conviction stating:
Because appreciable evidence of an overt act was presented in this case, the trial court erred in not allowing the defendant to be questioned regarding his knowledge of the victim's dangerous character and his knowledge of prior acts of violence committed by the victim....
State v. Anderson, supra, 550 So.2d at 800-801.
The court went on to hold the ruling by the trial court did not result in harmless error. The court stated:
The appellate court must be able to declare that the error was harmless beyond a reasonable doubt. State v. Martin, 458 So.2d 454 (La.1984).
Since, in this case, the evidence of the victim's dangerous character was not admitted and the record does not clearly show what the witness would have revealed about the victim's character or what the defendant actually knew about the victim's character, we cannot say that placing this evidence before the jury would not have affected the result of the trial.
State v. Anderson, supra, at 801.
See also, State v. Carter, 550 So.2d 805 (La.App. 2d Cir.1989), in which this court held the exclusion of evidence of the victim's character following evidence of an overt act was reversible error.
Where the excluded evidence would merely be cumulative to evidence that was presented to the jury however, the error may be harmless. See State v. Welcome, 458 So.2d 1235 (La.1983), cert. denied; Welcome v. Louisiana, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985).
In Welcome, the defendant was able to present a considerable amount of evidence during the course of the trial (often due to witnesses answering questions before the prosecution objected or before an objection was sustained). The court held that additional evidence of character would have been cumulative to evidence already before the jury and therefore the error was harmless. See also, State v. Del Carpio, 537 So.2d 377 (La.App. 4th Cir.1988), writ denied, 541 So.2d 871 (La.1989).
In the instant case, Gantt was able to present to the jury testimony of several violent acts on the part of the victims including various threats made by the victims against defendant and defendant's wife without objection by the prosecution. On direct examination, defense counsel asked the following:
Q Did you have any particular desire to hurt or cause injury to Billy and Michael?
A No, sir. I don't want to hurt anyone, but I knew about the things they were capable of doing. And they had been going throughI have seen a lot of things they have done. Billy tried to hit my wife with a baseball bat. Billy and Michael jumped on me down at University Park when that happened. And my back was hurting so bad I couldn't hardly move but I was just trying to go get my wife out of the way. And when I went to try to get my wife out of the way then that's when Michael attacked me.
Q Do you know of their reputation in the community for violence or aggressive behavior?
*1308 A I've seen it.
Q Do you know of their reputation?
A Yes, sir.
Q What is their reputation?
A They're supposed to bad [sic] characters. They get drunk and they jump on people and beat people up. I've seen them beat people up a lot of times.
Immediately following its ruling barring further evidence of specific acts, the court inquired of defense counsel "[d]oes he want to rehash the same old matter or does he want to go into additional acts that he's not gotten into at this stage?" In response, defense counsel alluded to acts of the victims' known by the defendant and others however, the exact nature of the additional disallowed testimony is not revealed by the record. Defense counsel did not attempt to preserve the excluded testimony for appeal by attempting to proffer the evidence as provided for by LSA-C.E. Art. 103.
[I]n criminal cases, as well as civil cases, a party has a legal right, when evidence has been excluded, to make an offer of proof of what counsel expects to prove, outside the presence of the jury.
State v. Adams, 537 So.2d 1262, 1265 (La.App. 4th Cir.1989) writ granted, 543 So.2d 2 (La.1989), affirmed in part, reversed in part, 550 So.2d 595 (La.1989).
Absent a proffer of evidence, we are unable to say that any additional testimony was not cumulative of the above quoted evidence already presented to the jury. Based on the totality of the record, we view the trial court's error in sustaining the state's objection to the testimony as harmless error.
Assignment of Error No. 3:
The Trial Court erred in admitting the results of the scientific tests when the court's denial of the motion to continue the trial was based upon its ruling that the state could not introduce the non-disclosed test results.
The defendant testified at trial that he shot Michael Arkansas at a distance of greater than four feet. The state subsequently called Richard Beighly, a firearms expert, to the stand. Mr. Beighly, testifying as to the results of a distance determination test, concluded the shots were fired at a distance of two to four feet. It was the admission of this testimony and the subsequent introduction of the test results which defendant asserts as error on the part of the trial court.
On April 29, 1991 the defendant filed a motion for discovery requesting the state to provide any and all results of scientific tests which were either intended for trial or exculpatory. On August 5, 1991, the state replied that "distance determination" analysis had been requested by the state. On January 27, 1992, the day of the trial, defendant filed a motion for continuance on the basis that he had never been supplied with the results of the distance determination test. The trial court denied this motion, but also ruled that the state could not use this evidence in its case in chief due to the fact that it had not been provided to the defense timely.
The record does not contain a written order by the trial court denying this motion and the minutes do not reflect a ruling on the issue. However, the record does contain the trial court's explanation of its ruling to defense counsel during the course of the trial. The court also pointed out at that time that defense counsel had long known such a test had been conducted, had an opportunity to go to the crime lab, and got the results of the test prior to the defendant testifying.
Appellant asserts that the trial court erred by allowing the state to introduce evidence that had been previously requested in discovery and not timely provided.
The failure of the state to comply with the discovery procedure will not automatically command reversal. The defendant must show prejudice in order for his conviction to be reversed. State v. Roy Lee Williams, 448 So.2d 659 (La.1984); State v. James, 396 So.2d 1281 (La.1981); State v. Ray, 423 So.2d 1116 (La.1982).
*1309 Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge and reversal is warranted only when there is an abuse of discretion and prejudice is shown. State v. Martin, 543 So.2d 1020 (La.App. 3d Cir.1989), writ denied, 550 So.2d 625 (La.1989).
The purpose of discovery rules in criminal trials is to eliminate unwarranted prejudice from surprise testimony. State v. Toomer, 395 So.2d 1320 (La.1981). In the instant case, defendant was certainly not surprised by the result of the distance determination test.
Appellant also asserts that the trial court's ruling that defendant opened himself to rebuttal evidence on the question of distance when he took the stand and testified in that regard dictates whether or not defendant should testify at trial.
Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
In Harris, the defendant had made some inculpatory statements prior to being apprised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The prosecution made no effort to introduce these statements during its case in chief, conceding that they were inadmissible. However, after the defendant took the stand, the state introduced the statements in order to impeach his testimony. The U.S. Supreme Court held the statements were properly admitted and affirmed the conviction.
Since the state does not and cannot know what evidence the defendant will use until it is presented at trial, the state is given the right of rebuttal. State v. Bobby Ray Williams, 445 So.2d 1171 (La.1984).
Rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party. In a criminal case, such evidence may be used to strengthen the state's original case. The determination of whether evidence is admissible on rebuttal is an issue which is addressed to the sound discretion of the trial court judge. State v. Widenhouse, 582 So.2d 1374 (La.App.2d Cir.1991), writ denied, 586 So.2d 567 (La.1991); State v. Huizar, 414 So.2d 741 (La.1982).
Such a ruling will not be disturbed except in extreme cases as where the evidence has been kept back deliberately and for the purpose of deceiving and obtaining undue advantage over the defendant. State v. Hills, 354 So.2d 186 (La.1977); State v. Bobby Ray Williams, supra.
Rebuttal evidence is evidence which has become relevant or important only as an effect of some evidence introduced by the other side. State v. Dayton, 445 So.2d 76 (La.App.2d Cir.1984); State v. Widenhouse, supra.
In the instant case, the defendant was aware of the distance determination test and could have obtained the results by visiting the crime lab. In addition the defendant was supplied with the results of the test prior to taking the stand. It is clear under these circumstances that the state had not deliberately kept the evidence back "for the purpose of deceiving and obtaining undue advantage over the defendant." State v. Hills, supra. It was therefore proper for the trial court to allow the state to introduce the test results as rebuttal evidence to counter the defendant's testimony in this regard.
This assignment is without merit.
Assignment of Error No. 5:
The sentence imposed was excessive under the circumstances of this case.
The defendant was sentenced on July 7, 1992. This was after the effective date of the Louisiana sentencing guidelines which became effective January 31, 1992. Defendant was sentenced to two concurrent six-year terms for the convictions of aggravated battery and attempted manslaughter. The trial court departed downward from the sentencing guidelines in this case due to mitigating factors.
*1310 The defendant was sentenced after the effective date of LSA-C.Cr.P. Art. 881.1. Article 881.1 precludes the state or defendant from raising an objection to the sentence or from urging any grounds not raised in a motion to reconsider sentence on appeal or review.
Not only must a motion for reconsideration be timely filed with the trial court, but the motion must also contain a specific ground or grounds upon which the defendant is seeking to have the sentence reconsidered. State v. Poe, 608 So.2d 299 (La.App.2d Cir.1992); State v. Barnes, 607 So.2d 872 (La.App.2d Cir.1992); LSA-C.Cr.P. Art. 881.1(D).
Because the defendant failed to move for such reconsideration, he is barred from attacking his sentence on appeal. State v. Bush, 604 So.2d 1383 (La.App.2d Cir.1992); State v. Bryant, 607 So.2d 11 (La.App.2d Cir.1992).
Assignment of Error No. 6:
This assignment is simply a request for the court to examine the sufficiency of the evidence to convict the defendant.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier-of-fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App.2d Cir.1988).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier-of-fact. LSA-Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App.2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App.2d Cir.1986), writ denied, 499 So.2d 83 (1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier-of-fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App.2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App.2d Cir.1986).
In the instant case, multiple eye witnesses to the crime testified for the prosecution. Each of these witnesses gave essentially the same version of the event. The defendant admitted to shooting the men and his story differed from that of the other witnesses only to the extent that he stated his belief that the encounter was not over when he fired his gun and that he did so in self defense.
The jury made a determination of credibility and apparently chose to believe the version of the incident given by the state's witnesses. The evidence presented at trial was sufficient to support the convictions.
This assignment is without merit.

ERROR PATENT
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief. In the instant case, the record shows that the court did not inform Gantt of the prescriptive period. Failure to do so constitutes error patent. However, this apparent defect has no bearing on whether the sentences are excessive and thus is not *1311 grounds to reverse the sentences or remand the case for resentencing. LSA-C.Cr.P. Art. 921.
The three-year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Art. 914 or 922. Therefore, prescription has not commenced to run. The purpose of the notice of Art. 930.8 C is to inform the defendant of the prescriptive period in advance. Accordingly, the trial court is directed to send appropriate written notice to Gantt within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of the proceedings.

CONCLUSION
All of the aforementioned assignments of errors are without merit. For the above and foregoing reasons, Gantt's convictions and sentences are affirmed.
AFFIRMED WITH INSTRUCTIONS.
NOTES
[1] We note that Gantt initially raised two other assignments of error, neither of which was briefed nor argued, and therefore deemed abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-14.4; State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).