916 So.2d 1285 (2005)
STATE of Louisiana, Appellee
v.
Lee Edward WILLIAMS, Appellant.
No. 40,381-KA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
*1286 Louisiana Appellate Project by Paula C. Marx, Mary Constance Hanes, for Appellant.
Don M. Burkett, District Attorney, Richard Z. Johnson, Jr., Assistant District Attorney, for Appellee.
Before BROWN, STEWART and MOORE, JJ.
MOORE, J.
The defendant, Lee Edwards Williams, was convicted of 14 counts of simple burglary and sentenced to four years imprisonment at hard labor on each count, to run concurrently. Defendant contends that the evidence was insufficient to convict him on 14 counts of simple burglary and the trial court erred in admitting into evidence a portion of a tape recording containing an alleged confession. We affirm the convictions and sentence.

FACTS
For 18 years, Fred Abbot traveled the rodeo circuit and to fairs and festivals selling his merchandise. In 2003, because of injuries from a wreck, 72-year-old Abbot stopped traveling and rented a booth at the Greenwood Flea Market to sell his remaining goods. He stored his merchandise in a trailer park that had not been inhabited for approximately 17 or 18 years. The park had 14 different structures and vehicles (10 trailer homes, a bus, a step van, a regular van and a pickup truck) that Abbot used as storage units. He kept all of the units locked except for one, which contained "garbage." Abbot had blocked the entrance to the fenced trailer park with a T-post and posted "no trespassing" signs. The stored items included leather vests, hats, knives, radios, cassette players, belt buckles, turquoise jewelry, necklaces, rings, bracelets, an antique stove, beds, family keepsakes/heirlooms, and many other *1287 items totaling between $25,000 and $30,000. The merchandise was uninsured.
In May 2003, Abbot noticed that there had been some traffic at the trailer park because the tall grass was bent down and the T-post was gone. He did not disturb the scene. He contacted the DeSoto Parish Sheriff's Department and an investigator accompanied him and his wife to the trailer park. The doors to the storage units had been forcibly opened, and one door had been completely removed. The Abbots entered all 14 units with the investigator and observed that almost all of the merchandise was gone. They made a handwritten inventory which identified all 14 storage units as having been entered and listed the specific items taken from each. Some of the items taken were large, i.e., furniture, gas kitchen stoves, mobile home axles, and a mobile home central heat unit and compressor. The investigation failed to produce any eyewitnesses to the burglaries. Also, no fingerprints were lifted from the scene. Photographs were taken at the scene but none were introduced into evidence at trial. However, Mrs. Abbot reported that neighbors said that there had been people on the property.
About mid-morning on May 24, 2003, the Abbots went to the Greenwood Flea Market to see if they could recognize any items being sold as those taken from their DeSoto Parish storage units. While looking around, they observed the defendant drive past them in a late model red and white pickup truck with what they recognized as their boxes in the truck bed. He stopped the truck near the Abbots and entered a booth. Upon closer inspection, the Abbots recognized the wooden ammo boxes as some taken from the storage units. The boxes had Mrs. Abbot's handwriting on the front. Abbot opened one of the boxes and confirmed that it contained some of his merchandise. Also, Abbot recognized an air conditioner unit in the truck bed as one from his trailer park.
When the defendant returned to the truck, the Abbots confronted him about having their property. Several other people gathered after observing the confrontation. The defendant quickly got into the truck and fled the flea market. Mrs. Abbot ran to her truck and tried to cut the defendant off before he could leave, but was unable to catch him. The Abbots obtained the license plate number of the defendant's truck and reported it to the Greenwood Police Department. At trial, both Mr. and Mrs. Abbot identified the defendant as the same person they confronted at the flea market. Mr. Abbot testified that he never authorized anyone to go onto his property and take his merchandise.
A subsequent investigation revealed that the truck belonged to the defendant, who lived on Buncombe Road in Shreveport, Caddo Parish. On May 27, 2003, Officer Michael McDaniels of the Caddo Parish Sheriff's Office went to the defendant's residence to question him about what transpired at the flea market, and the Abbots' allegations that he was in possession of property taken from their storage units. The defendant was outside the residence when McDaniels arrived and he allowed McDaniels to look around outside. McDaniels did not see any of the stolen items (described to him as leather belts, hat bands, toys and jewelry), but recognized the truck as matching the description of the one involved in the flea market confrontation.
The defendant voluntarily went with McDaniels to the Sheriff's Department substation for questioning. At trial, McDaniels testified that after advising the defendant of his Miranda rights, which he stated he understood and waived, the defendant voluntarily gave an interview. *1288 The defendant admitted being involved in the confrontation at the flea market and that he had sped away quickly. Within minutes of beginning the interview, the defendant began to cry and admitted taking a number of items from what he described as an abandoned trailer park just off Linwood Road in DeSoto Parish. The defendant explained that there were "several" buildings on the property and he had gone inside the buildings and taken some boxes containing leather vests, leather belts, jewelry and toys. The defendant stated that "all of the buildings were unlocked when he went in." He said that he made "several trips fairly recently" to get these items and had sold some of them to people at the flea market and some to a thrift shop. The defendant admitted that some of the items were in the back of his truck on the day he was confronted at the flea market. He burned those items at his home after the confrontation. During the interview, the defendant was wearing a silver eagle turquoise necklace he admitted came from the Abbots' property. McDaniels arrested the defendant after the interview and placed him in the Caddo Correction Center for possession of stolen property. The defendant was subsequently released and later re-arrested for the DeSoto Parish burglaries.
The defendant was charged by bill of information with 14 counts of simple burglary. The defendant testified at trial that he had been going to the flea market to buy and sell property every weekend for 10 to 12 years. He denied that he had ever been to the abandoned trailer park, and testified that he didn't know whether the property the Abbots saw in his truck belonged to them. The defendant explained that he bought things from different people. He further denied ever giving a statement to McDaniels. The defendant asserted that he had only spoken to Mike Malone of the Greenwood Police Department, and had not given a formal statement. On cross-examination, the defendant volunteered that he sold drugs and sometimes traded things for drugs, and explained that the reason he left the scene at the flea market so quickly was because he had drugs on him at the time.
A six-person jury found the defendant guilty as charged on all 14 counts. A pre-sentence investigation report was ordered, and on April 11, 2005, the applicant was sentenced to serve four years imprisonment at hard labor on each count, to run concurrently. The defendant now appeals.

DISCUSSION
By his first assignment of error, defendant alleges that the evidence was not sufficient to support convictions for all 14 counts of simple burglary in DeSoto Parish, even if it is believed that he possessed some of the stolen property while in Caddo Parish.
The defendant argues that the state presented no evidence at trial to link the defendant to the burglaries  there were no eyewitnesses and no fingerprints were taken at the scene, and the defendant never confessed to entering all 14 storage units. He contends that the inculpatory statement made to Detective McDaniels was that he entered several buildings and took some boxes that contained leather vests, leather belts, jewelry, and toys, but he never admitted going into all 14 units. Although the victims testified they saw some items taken from their storage units in the defendant's truck, defendant argues that the victims never identified from which storage unit(s) the items were taken. He notes that it is impossible that all of the merchandise claimed by the Abbots to have been stolen from all 14 storage units was seen in the defendant's truck. Hence, he argues that the state failed to prove more than one count of simple burglary, and that the remaining 13 counts *1289 should be reversed. He contends that there is a possibility that all 14 convictions might later be used in multiple billing of the defendant.
La. R.S. 14:62 A defines simple burglary as the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein.
Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Henson, 38,820 (La.App. 2 Cir. 9/22/04), 882 So.2d 670; State v. Green, 28,994 (La.App. 2 Cir. 2/26/97), 691 So.2d 1273.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The record supports the conclusion that the state has carried its burden of proving the defendant's guilt of the 14 counts of simple burglary. When the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could reasonably conclude that all of the elements of the 14 offenses were proved beyond *1290 a reasonable doubt. State v. Hearold, supra; State v. Bosley, supra. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant made an unauthorized entry of the 14 storage units (vehicles and structures) with the intent to commit a felony or any theft therein. See La. R.S. 14:62 A; State v. Sutton, supra; State v. Owens, supra. The evidence adduced proved that each of the locked storage units had been forcibly opened, merchandise had been taken from all 14 storage units, and almost all of the merchandise was gone. McDaniels testified that the defendant admitted going onto the property several times, entering the buildings and taking items that he later sold or burned. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, supra.
Nor are we persuaded to change the conviction to one count of simple burglary based on the defendant's argument that because the state did not prove the dates the defendant burglarized specific storage units, he is subject to being multi-billed for this offense. In State v. Johnson, 2003-2993 (La.10/19/04), 884 So.2d 568, the supreme court held that, under the habitual offender statute, multiple convictions obtained on the same date but based on unrelated conduct can be counted separately for sentence enhancement, thereby overruling State ex rel. Mims v. Butler, 88-KH-2816 (La.5/26/92), 601 So.2d 649, which it reasoned was based on an incomplete legislative record. The court ruled that the defendant was subject to sentencing as a fourth offender even though two of his prior convictions had been entered on the same date. We note, however, that the two prior convictions entered on the same date were separate and distinct events, occurring on different dates, and not as part of a single criminal episode. By contrast, however, we note that the defendant in this instance was charged and convicted of 14 counts of burglary alleged in the bill of information to have been committed on or about May 1, 2003.
For these reasons, we hold that the evidence was sufficient to convict the defendant on all 14 counts of simple burglary.
By his second assignment of error, the defendant argues that the trial court erred in allowing into evidence, over defense counsel's objection, a portion of the tape recording in which Mr. Williams allegedly confessed to Det. McDaniels.
During the trial testimony of Det. McDaniels, the state elicited testimony regarding the defendant's statement. The defense objected, and a bench conference was held out of the hearing of the jury. The defense stated that it had not seen this inculpatory statement, had not received a copy of the transcript or listened to the tape. It also complained that it had never received notice that an inculpatory statement would be used. The state asserted that the evidence they gave the defense showed that the defendant's statement was recorded and that it did not receive the tape recording until the day of trial. It further related that the tape is inaudible at points, and it did not see a need to put it into evidence. The defense acknowledged that it received one police report reflecting that the defendant gave a recorded statement. The trial court overruled the defendant's hearsay objection, cautioned the officer not to mention that the statement was recorded, and McDaniels was allowed to testify regarding the content and circumstances of the defendant's statement.
After the defendant testified at trial that he never gave a statement of any kind to *1291 McDaniels, the state sought to introduce into evidence the tape recording of the statement, which was mostly inaudible. The defense again objected on the ground that the state never informed them that it intended to use the statement, and never provided him with a transcript or recorded version of such statement. The defense admitted that it was given a complete copy of the state's file. According to the state, this discovery indicated that a recorded statement had been taken from the defendant. The state informed the court that it had only received a copy of the tape the morning of trial and informed the defense before opening statements. The trial court ruled that the beginning portion of the tape would be admitted for purpose of impeachment. The trial court stated that it had listened to the tape and in the beginning portion a person identified himself as "McDaniels" and gave the date and the name of the defendant. McDaniels then testified regarding his meetings with the defendant, including his involvement in his arrests. The defendant's taped statement was introduced into evidence. The trial court allowed only the beginning of the tape to be played. In that portion of the tape, McDaniels identified himself, stated the date, and stated that he was talking to the defendant.
The defense argues that although it admitted that it was given discovery, it did not believe that it was sufficient to inform that there was an inculpatory statement in existence or that the state intended to use it. It notes that the discovery did not include the defendant's statement or tape recording, but only a statement from Lieutenant Morris indicating that McDaniels told him (Morris) that he (McDaniels) recorded a statement in which the defendant confessed. The defense asserts that the matter was only obliquely referred to in the discovery matters. Under these circumstances, it argues that the trial court erred in allowing the tape recording into evidence, resulting in an unfair trial for the defendant. The defense asserts that the convictions should be reversed and remanded for a new trial.
The state notes in brief that the defense was given a complete copy of the state's file, which indicated that a recorded statement had been taken from the defendant. It contends that in accordance with La. C. Cr. P. art. 768, the state can enter a confession into evidence if pre-trial discovery has been granted. The state argues that it only introduced the taped statement into evidence during rebuttal after the defendant testified that he had not given a statement to McDaniels, and only the beginning portion of the tape was played for the jury.
La. C. Cr. P. art. 716 provides for the defense's discovery of statements by the defendant. La. C. Cr. P. art. 729.3 provides for a party's continuing duty to disclose discovery.
The purpose of discovery rules in criminal trials is to eliminate unwarranted prejudice from surprise testimony. State v. Toomer, 395 So.2d 1320 (La.1981); State v. Williams, 25,835 (La.App. 2 Cir. 2/23/94), 632 So.2d 893, State v. Gantt, 616 So.2d 1300 (La.App. 2 Cir.1993), writ denied, 623 So.2d 1302 (La.1993).
The failure of the state to comply with the discovery procedure will not automatically command reversal. The defendant must show prejudice in order for his conviction to be reversed. State v. Williams, supra; State v. Gantt, supra.
Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge and reversal is warranted only when there is an abuse of discretion and prejudice is shown. State v. Williams, supra; State v. Gantt, supra.
The court will review the record for a determination of whether any prejudice *1292 which may have resulted from the noncompliance caused the trier of fact to reach the wrong conclusion. State v. Williams, supra; State v. Lewis, 535 So.2d 943 (La. App. 2 Cir.1988), writ denied, 538 So.2d 608 (La.1989), reconsideration denied, 541 So.2d 844 (La.1989), cert. denied, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 370 (1989).
Although there is a continuing duty of disclosure, there is no duty on the part of the state to disclose information which it does not possess. Therefore, exclusion of the evidence is a sanction which is not available where the state has promptly informed the defendant of the receipt of additional evidence, even though the new material is uncovered at an inopportune time for the defense. State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, cert denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997), citing State v. Williams, supra.
As in Williams, supra, the record here demonstrates that the state substantially complied with both La. C. Cr. P. art. 716 and La. C. Cr. P. art. 729.3. The state responded to the original motion by supplying the defendant with a copy of its file, which included the police report referencing the defendant's recorded statement. Furthermore, by notifying the defendant of the tape of the defendant's statement promptly after learning of it on the morning of trial, the state's continuing duty to disclose under La. C. Cr. P. art. 729.3 was fulfilled.
Furthermore, there is no indication that the defendant was prejudiced. The defense had received the police report that made reference to a taped admission by the defendant. McDaniels testified regarding the content of the defendant's statement, and the tape was admitted into evidence for the limited purpose to rebut the defendant's testimony that he never gave a statement to McDaniels. Even if there was a limited extent of prejudice, any prejudice which may have resulted from the late disclosure did not cause the trier of fact to reach the wrong conclusion. See State v. Williams, supra.
This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the convictions and sentences of the defendant are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.