hWALTZER, Judge.
STATEMENT OF THE CASE
This case is on remand from the Louisiana Supreme Court for reconsideration in light of State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241.
Byron Clark was charged by bill of indictment with first degree murder of his sixty-five year old mother, a violation of La. R.S. 14:30. Clark pled not guilty. The trial court denied his motion to suppress evidence and granted his request for examination by a lunacy commission. A lunacy hearing was held and Clark withdrew his motion for the commission. Clark was tried by a twelve person jury on 29-31 May 1996. The trial court granted Clark’s motion to suppress statement and granted the State’s motion to deny student practitioner Andrew Miehael-son permission to examine the pathologist witness. The Louisiana Supreme Court denied Clark’s application to set aside the latter order. Following trial, the jury entered a unanimous verdict of guilty of manslaughter. On 20 August 1996, Clark filed motions for post verdict judgment of acquittal based on insufficiency of the evidence and for new trial on various grounds including failure of the trial court to allow a recess during which Clark could locate alleged witness Aleide “Ed” Sylve. On 22 August 1996 the court denied both motions, but noted that Clark could make a proffer at a later date if he were able to locate Aleide Sylve. The court *136 issued a capias for Sylve without bond ordering Sylve to give an oral statement before 23 September 1996. The court sentenced Clark to serve twenty years at hard labor and the State charged Clark as a multiple offender.
ROn 23 September 1996 the court observed that Alcide Sylve had not been located. The State then requested a continuance of the multiple bill hearing which had been set for that date. The trial court denied the continuance and found that Clark was not a multiple offender. The State applied to this court for a writ on the issue and, in 96-K-2225, this Court vacated the trial court’s ruling as to the multiple bill and ordered the trial court to conduct habitual offender proceedings within 30 days. According to the minute entry of 1 July 1997, the trial court granted Clark’s motion to quash the multiple bill.
Appellate counsel filed an errors patent brief, supplemental brief with one assignment of error and motion to withdraw. Clark filed a supplemental pro se brief in which he assigns four errors. We find no errors patent and no merit in counsel’s assignment of error or in the pro se assignments of error and affirm Clark’s conviction and sentence.

STATEMENT OF THE FACTS

Jonathan Forstall, Clark’s brother, testified that on 24 July 1994 at about 1:30 a.m. he was awakened in his apartment by Clark’s banging on his door. Forstall admitted Clark, who was very upset and told Forstall to check on their mother because Clark thought he had killed her. Forstall immediately went upstairs to dress and woke his wife to sit with Clark while he went to his mother’s house. He asked Clark for the house key, but Clark told him that he had left through his bedroom window.
When Forstall arrived at his mother’s house, he decided not to go in alone and asked a neighbor to call 911. Forstall and the responding police officers then climbed through an open window and went through the house and found the body hof Dorothea Sylve, mother of Forstall and Clark, on the floor between her bed and the hospital bed of her invalid mother, Gladys Leonard. The elder woman was awake but unable to speak. Homicide Detective Gary Márchese testified that the scene in the bedroom indicated a struggle had taken place. Gladys Leonard’s bed was askew, blocking access to the bathroom door. There was blood on the floor around the victim, a blood-soaked pillow by her head and blood droplets on her bed. There was one large hoop earring on the victim’s bed. The matching earring was found on the floor at the foot of the bed. There was a pair of glasses at the head of the bed. One lens to those glasses was located on the floor by the nightstand. The battery from a cordless phone was on the victim’s bed, but the actual phone and the back to the battery compartment were found in Clark’s grandmother’s bed.
A police unit went to Forstall’s apartment, picked up Clark and took him to the crime scene, where he was arrested. Forstall’s wife, Janice Simmons, also went to the victim’s house, where she was interviewed.
Simmons testified that after her husband left the apartment, she went downstairs and sat with Clark for fifteen to twenty minutes until the police arrived. She testified that Clark arrived in bloody clothing and carrying a 40 ounce bottle of beer. She further testified that, while Clark was telling her what happened between him and his mother, he was nervous, shaking and crying. Clark told Simmons that he and his mother had had an argument over his drinking, she was “downing” her children, and he just “snapped.” He further told Simmons that he jumped on his mother and remembered watching her body shake as she took her last breath. Simmons testified that Clark’s demeanor then changed. She testified, [/‘He didn’t regret killing that bitch, but he did regret doing it in front of his grandmother.”
Dr. Susan Garcia, a forensic pathologist for the coroner’s office, testified that the victim died of asphyxiation by suffocation. She noted evidence that small blood vessels had burst, which is characteristic of deprivation of oxygen. She further noted lacerations in the mouth which indicated that the exterior portion of the mouth was forced against the victim’s teeth. Garcia opined that the death could not have been accidental. Counsel *137 stipulated that blood stains on Clark’s clothing were type 0, that the victim’s blood type was 0 +, and that Clark’s blood type is 0 + .
Dr. Sherif Salda opined that the evidence did not rule out the possibility that the victim’s death was accidental. The victim could have hit her head, causing a laceration on the top of her head, and fallen in such a position as to block her airway. The lacerations in the victim’s mouth could have been caused by an instrument used by emergency technicians to open obstructed airways.

ERRORS PATENT REVIEW/ASSIGNMENT BY COUNSEL

By counsel’s original'assignment of error, he requests a review of the record for errors patent. Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). Counsel’s detailed review of the procedural history of the ease and the facts of the case indicate a thorough review of the record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. Counsel has reviewed all available transcripts and has found no trial court rulings which arguably support the appeal.
|5In accordance with the dictates of Benjamin, we have performed an independent, thorough review of all the pleadings filed in the district court which are in the appeal record, all minute entries of the district court proceedings, the bill of information, and all transcripts contained in the appeal record. Clark was properly charged by bill of indictment with first degree murder, a violation of La. R.S. 14:30, and the bill was signed by the foreman of the grand jury. Clark was present and represented by counsel at arraignment, all hearings, and sentencing. The State, Clark and his counsel, waived jury sequestration for the first night following jury selection. The transcript indicates that the jurors were sequestered on the second night and the unanimous verdict of the twelve jurors was rendered on the third day of trial. The evidence adduced at trial was sufficient to support Clark’s conviction on the responsive charge of manslaughter. The sentence of twenty years at hard labor is legal in all respects.
Counsel waived the delay between denial of post-trial motions and sentencing. Prior to sentencing and again on the date of the first multiple bill setting, the trial court voiced its willingness to reconsider a motion for new trial should Clark be able to locate and produce alleged witness Alcide Sylve. However, Sylve was never produced. Because the post-trial motions were denied pri- or to sentencing, there was no error in the trial court’s sentencing Clark pending possible production of Alcide Sylve.
Our review of the record reveals no errors patent, and an independent review of the transcripts contained in the appeal record reveals no trial court ruling which arguably supports the appeal.

\c,COUNSEL’S SUPPLEMENTAL ASSIGNMENT OF ERROR: The trial court erred in allowing the prosecutor to go beyond the evidence in closing argument.

Counsel filed a supplemental brief and complied with State v. Jyles, supra. We have reviewed the record in its entirety and find no trial court ruling which arguably supports this appeal. Counsel suggests that the prosecutor’s reference in closing argument to Simmons’s testimony that Clark admitted getting into a fight with his mother and smothered her with a pillow went beyond the evidence. The record reflects no specific reference to a pillow in the Simmons testimony; however, Simmons testified that Clark admitted getting into a fight with his mother, “snapping”, jumping on her and watching her body shake as she took her last breath.
Following trial counsel’s objection to the prosecutor’s reference to “smothering with a pillow,” the trial court admonished the jury as follows:
I will let you decide on what was testified to. I want to admonish you that I am giving counsel wide latitude to tell you what they believe was testified to. I will overrule the objection. But the admonition is you will decide what Miss Simmons testified to. If you feel that counsel is not *138 giving you what Miss Simmons testified to, ignore the statements of counsel.
[Prosecutor]: And I would say right here none of what — and Mr. Merritt said it as he stood up. None of what I have to say is evidence. What you had before you is the evidence. All right. This is our argument as to what the evidence shows. It’s my recollection, and certainly your 13 memories are better than my one. And I would ask that when you go into that deliberation room, you play back this trial....
As a reviewing court, we do not believe that the reference to a pillow contributed to the verdict. State v. Bowman, 95-0667 (La. App. 4 Cir. 7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400. This assignment of error is without merit. FIRST AND SECOND PRO SE ASSIGNMENTS OF ERROR: The State erred by indicting the defendant for fírst degree murder instead of manslaughter; the State failed to prove beyond a reasonable doubt that defendant had specific intent to kill as required as a prerequisite of murder.
Clark does not allege prejudice from the indictment for first degree murder instead of manslaughter. We interpret this pro se assignment of error as argument that an indictment for first degree murder, where there is no evidence to support such a verdict, tends to unfairly eliminate certain jurors on the basis of their opposition to the death penalty causing the remaining jurors to be predisposed to a finding of guilty.
The exclusion of jurors opposed to capital punishment does not automatically result in an unrepresentative jury on the issue of guilt and does not increase substantially the risk of conviction. Witherspoon v. State of Illinois, 391 U.S. 510, 519, 88 S.Ct. 1770, 1774-75, 20 L.Ed.2d 776 (1968). Accordingly, even were the evidence insufficient to sustain a conviction for first degree murder, Clark was not prejudiced for having been charged for that offense.
Clark claims that the State failed to prove the element of specific intent required for a conviction of first degree murder. The trial court instructed the jury as to the elements of first degree murder, second degree murder and manslaughter as they related to the facts of the case. The court instructed the jury prior to deliberations and again in the midst of the deliberations, upon the jury’s request for further instruction as to the elements of the possible verdicts. The court’s Isinstructions were essentially the same on both occasions and closely tracked the language of the statute, omitting only those paragraphs and subparagraphs which did not apply to the facts of the case. In response to additional questions by the foreman, the court reread the first portion of the manslaughter statute which makes reference to first and second degree murder.
Because Clark was convicted of manslaughter, not first degree murder, only the elements of manslaughter are relevant. The court correctly instructed the jury as to the elements of manslaughter. If the jury accepted as credible the testimony of Dr. Garcia that the medical evidence negated accidental death, the testimony of Detective Márchese relative to evidence of a struggle, and the testimony of Clark’s brother and sister-in-law relative to the admissions by Clark, then they could have found the specific intent to kill or commit great bodily harm required for first or second degree murder, but that the killing was done in sudden passion or heat of blood, proving manslaughter. Alternatively, if the jury found credible the testimony of Dr. Sakla that the death could have been accidental, the evidence was sufficient to conclude that Clark specifically intended, at the least, to commit a simple battery upon his mother, which battery resulted in her death, likewise supporting a verdict of guilty of manslaughter. The evidence was sufficient to support either alternative. Accordingly, this assignment has no merit.

THIRD AND FOURTH PRO SE ASSIGNMENTS OF ERROR: Clark was denied effective assistance of counsel and the trial court erred by not granting Clark’s motion for a new trial.

Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial | (¡court *139 where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
Clark’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). He must show that counsel’s performance was deficient and that the deficiency prejudiced him. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to Clark by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced Clark if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, Clark must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. Clark must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
Clark makes seven claims relative to the deficiency of counsel. First, he avers that counsel allowed him to be charged and tried on an invalid statute. Clark fails to support the claim that this is an invalid statute. Accordingly, this claim is without merit.
| ipSecond, Clark claims that counsel failed to request a mistrial when the jury returned for the second time announcing a deadlock. The transcript indicates that the jury returned to court the first time to obtain a clarification of the law and to request exhibits. The jury returned to court the second time for the foreman to advise the court, “We have deliberated and deliberated, and we have not reached a conclusion yet. And if it pleases the Court, whichever pleases the Court, that we have a hung jury or if we go back and deliberate some more, whichever one you decide.”
The foreman’s statement did not suggest that the jury was hopelessly deadlocked, but merely advised the court that the jury had not yet reached a conclusion. Accordingly, the court correctly ordered the jury to continue to deliberate. The prosecutor requested a mistrial, which was denied. This claim is without merit.
Third, Clark claims that counsel failed to object to an improper jury instruction. He fails to designate the allegedly improper instruction and our review of the instruction reveals no error.
Fourth, Clark claims that counsel failed to move for a reconsideration of sentence; however, he fails to state grounds for this claim or to show that he was prejudiced by counsel’s failure to file the motion.
Fifth, Clark claims that appellate counsel failed to properly assign and argue errors. As noted above, appellate counsel reviewed the record and found no errors which arguably supported the appeal. The record does not reveal any error which would justify our vacating the conviction or sentence and does not support a finding of ineffective assistance of appellate counsel.
In Sixth, Clark claims that counsel failed to make proper contemporaneous objections at trial. However, he fails to indicate specific trial errors to which counsel failed to object. Accordingly, there is nothing for this court to review as to this claim.
Seventh, Clark claims that counsel was unprepared to challenge the forensic evidence due to the exclusion from participation ' of student practitioner Andrew Michaelson. Appointed counsel Clyde Merritt obtained the assistance of law student Andrew Michaelson at some point in the proceedings of the case. Prior to jury selection, the State filed a motion to deny Michaelson permission to actively participate on the record. The State argued that Michaelson was not a qualified *140 student practitioner under Rule 20 of the Louisiana Supreme Court. The State further noted, in its writ opposition[1], that when it became aware in the week before trial that Michaelson did not meet the criteria set forth in the rule, it advised Michaelson that the State would object to his participation. The trial court ruled that Michaelson could sit with Mr. Merritt and assist him, but could not take an active role on the record. Defense counsel notified the court of his intention to take a writ.
Following the trial court ruling, the trial proceeded with jury selection. The next morning, trial resumed with opening arguments and direct examination of Dr. Garcia, the State’s forensic expert. Meanwhile, trial counsel filed an emergency writ application to the Louisiana Supreme Court seeking an exception to its rule, in consideration of the extensive preparation by the student practitioner on the forensic issues of the case. Counsel further argued that he had relied on the |12student practitioner in this area and thus was unprepared to question the medical witnesses himself.
Following the direct examination of Dr. Garcia by the State, the trial court declared a recess which lasted until notice was received from the Louisiana Supreme Court that the defense writ was denied. Defense counsel then moved for a mistrial so that he might prepare for the forensic witnesses, which motion was denied.
Despite the protestations of defense counsel that he was unprepared to question the forensic witnesses, our review of his examination of those witnesses does not support his claim. This assignment of error is without merit.

CONCLUSION AND DECREE

We find no errors patent, no merit to counsel’s supplemental assignment of error and no merit to the pro se assignments of error. Appellate counsel has complied with the provisions of the Jyles holding and is permitted to withdraw. Defendant’s conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED; MOTION TO WITHDRAW GRANTED.

. The record contains neither the State’s written motion, if there was one, nor the transcript of the State’s argument, if the motion was made orally. The minute entiy indicates that the motion was filed and granted.