874 So.2d 197 (2004)
STATE of Louisiana
v.
Freddie Joe LOSTON.
No. 2003 KA 0977.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*200 J. Phil Haney, District Attorney, Franklin, Counsel for Plaintiff/Appellee State of Louisiana.
Jennifer Pate, Baton Rouge, Counsel for Defendant/Appellant Freddie Joe Loston.
Before: WHIPPLE, KUHN, and MCDONALD, JJ.
MCDONALD, J.
Freddie Joe Loston was charged by grand jury indictment with manslaughter in violation of La. R.S. 14:31. He pled not guilty. Following a jury trial, defendant was found guilty as charged and sentenced to eighteen years imprisonment at hard labor. Thereafter, defendant was charged and adjudicated as a second felony offender, pursuant to the provisions of La. R.S. 15:529.1.[1] After his adjudication as a second felony offender, the previous sentence was vacated and defendant was sentenced to forty years imprisonment at hard labor.
On appeal, defendant asserts five assignments of error as a basis for reversal of his conviction and sentence, as follows:
1. The evidence presented was insufficient to establish beyond a reasonable doubt that the killing at issue was not committed in self-defense.
2. The trial court erred in failing to allow the defendant to introduce specific instances of violent conduct on the part of the victim.
3. The trial court erred in overruling defendant's objection when the prosecutor impermissibly referred to defendant's failure to take the stand.
4. The trial court erred in denying defendant's motion to reconsider sentence.
5. The sentence imposed was excessive.
After a thorough review of the record and the errors assigned, we affirm defendant's conviction, as well as his habitual offender adjudication and sentence.[2]

*201 FACTS
On January 13, 2001, Edward Lewis, Jr., and the defendant, Freddie Loston, had a verbal dispute at a local establishment known as Johnny Bo's in Four Corners, Louisiana. There is no indication that this "beef" went any further than a verbal exchange. Berva Colar testified that the defendant requested a ride and Edward approached their car asking the defendant to give him "that man's damned money." Edward did not threaten the defendant and defendant gave him some money before they drove away. Edward and his brother, Gregory Lewis, left Johnny Bo's on their bicycles and went home. Shortly thereafter, Edward told Gregory that he knew where to find the defendant and that he had a "beef" with the defendant.
Between 8:00 and 9:00 p.m. that night, Edward and Gregory rode their bicycles to the residence of Gerald Colar at 186 Jones Road in Four Corners, where they expected to find the defendant. Edward was unarmed and a bit ahead of Gregory on the road. By the time Gregory arrived, Edward had already entered the Colar residence and was exiting, followed by the defendant and several others. Gregory observed them walking toward the road. "They started arguing. Then they started fighting." Gregory did not see the start of the tussle, because he noticed that one of the women who had come outside, known to him as "Nici," had a knife in her hand. Gregory protested to Nici that this was just a fight and that there was no need for a knife. Eventually, Gregory saw that his brother was on top of the defendant, choking him. He pulled his brother off of the defendant, and he and Edward left on their bikes for home. The defendant left the scene walking in the other direction. On the way home, Edward fell off of his bike and collapsed in the roadway.
Gregory did not see the defendant stab his brother and did not know that Edward had been wounded. Gregory went for help, asking a neighbor to watch over his brother until he returned. The neighbor, concerned, enlisted the help of two other men to bring the victim home, where he was placed on a sofa.[3] Edward tossed and turned and was unresponsive. Eventually, Gregory noticed blood and took off some of his brother's clothing, discovering blood on his chest. Edward's heavy overcoat and warm winter clothing had absorbed the blood and disguised the fact that he was mortally wounded. The family called 911 for assistance. An ambulance arrived to take Edward to the hospital, where he was pronounced dead as a result of a stab wound that had nicked his heart and a major blood vessel.
Detective Robert Smith, of the St. Mary Parish Sheriff's Department, was dispatched to the Colar residence that night to investigate. He found a blue knit cap in the yard near scuffmarks in the mud and grass that was the apparent location of a scuffle. About ten feet away, closer to the residence, he found a steak knife. Defendant stipulated that this knife had the victim's blood on it. An autopsy demonstrated that the fatal wound came from a single edged knife, like the kitchen knife found by officers at the scene of the homicide. Small cuts on the victim's inner and outer layers of clothing corresponded to the knife's entry points. The autopsy further revealed that the victim had a blood *202 alcohol level in excess of .2 and had illegal controlled substances, including cocaine, in his bloodstream.
A number of persons visiting at the Colar residence that evening witnessed some or all of the surrounding events. Forest Lockett testified that Edward came to the door, was admitted, and asked defendant to give him his "packet." Defendant replied that he had already given it to him at the store. Nici told the men to take their dispute outside and they did so. Lockett did not see either of them with a weapon. Willie Gabriel testified that between 8:00 and 9:00 p.m. he was watching TV at the Colar residence. Edward arrived and argued with the defendant about something. They were told to take it outside. Denise Archangel ("Nici") likewise recalled the victim arriving and arguing with the defendant. She ordered the men out of the house, telling them that "they wasn't going to start no fight" at her mother's house. She followed them outside but saw no weapons. Berva Colar also remembered Edward arriving and fussing with the defendant about money. Edward was hollering and using profanities. After Nici told them to go outside, Berva saw Edward exit first. Before following Edward outside, the defendant picked up a knife from the table. Berva identified the steak knife found outside by the police as the one the defendant armed himself with right before he followed Edward outside. Gerald Colar, who was sleeping when Edward arrived, was awakened by Berva. He got up, went outside, and saw the two men on the ground fighting, with Edward on top, holding the defendant down. Gerald testified that Edward was holding defendant's arms pinned to the ground to keep the defendant from hitting him. He did not see either man with a weapon at that time. Then he observed Gregory pull Edward off of the defendant.
Later that same evening, Theresa Wagner, the defendant's cousin, informed the defendant that Edward had died. He admitted that he had stabbed Edward, but protested that he did not believe he had wounded him badly enough to cause his death. He telephoned police and surrendered to them. There is no indication that defendant sustained any injuries during the fight with the victim.
Defendant did not present any witnesses or evidence at trial. Through cross-examination, however, defense counsel attempted to show that Edward had a reputation for fighting, and that the defendant acted to defend himself against Edward, who was drunk and on drugs. Berva Colar testified that the victim was drunk that night and that he was known for fighting, although not frequently. Gregory likewise admitted that his brother, Edward, was hard headed and had been in fights in the past. He also acknowledged that they had been drinking that day. Forest Lockett, however, testified that the victim appeared angry, but did not appear to be drunk or on drugs.
After a jury trial, defendant was found guilty of manslaughter by a unanimous vote of the jurors.

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends that the evidence presented by the State was insufficient to prove the essential elements of manslaughter. Specifically, he argues the State did not disprove beyond a reasonable doubt his claim that he acted in self-defense. We disagree.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime *203 and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence is excluded. La. R.S. 15:438; State v. Wright, 98-0601, p. 2 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and 00-0895 (La.11/17/00), 773 So.2d 732. When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 98-0601 at p. 3, 730 So.2d at 487.
In this case, the defendant was found guilty of manslaughter. La. R.S. 14:31 defines manslaughter in pertinent part as follows:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person ....
Defendant does not deny that he stabbed the victim, inflicting the fatal wound, while the two were engaged in an argument that led to a physical confrontation. Thus, we are satisfied that there was sufficient evidence to establish all of the elements of manslaughter as described in La. R.S. 14:31 A(1). Moreover, it is apparent that at the time, defendant was in the course of committing, at the very least, an aggravated battery, a felony not enumerated in Article 30 or 30.1. Louisiana Revised Statute 14:33 defines battery to include the intentional use of force or violence upon the person of another. Louisiana Revised Statute 14:34 defines aggravated battery as a battery committed with a dangerous weapon. Alternatively, defendant was in the course of committing an aggravated assault, an intentional misdemeanor directly affecting the person. Assault is an attempt to commit a battery. La. R.S. 14:36. Aggravated assault is the attempt to commit a battery while armed with a dangerous weapon. La. R.S. 14:37 A. Thus, defendant's conduct also constituted manslaughter pursuant to La. R.S. 14:31 A(2)(a). See State v. Montgomery, 499 So.2d 709, 719 (La.App. 3rd Cir.1986), writ denied, 502 So.2d 106 (La.1987). Where, as here, there is evidence that defendant had specific intent to commit a felony or an intentional misdemeanor not enumerated in Article 30 or 30.1, and a death results in *204 the course of commission of the offense, the evidence is sufficient to support a manslaughter conviction, even if the mortal injury inflicted was accidental. See State v. Jordan, 00-282, pp. 14-15 (La.App. 5th Cir.10/18/00), 774 So.2d 267, 275, writ denied, 00-3329 (La.11/9/01), 801 So.2d 363; State v. Clark, 97-0359, p. 8 (La.App. 4th Cir.10/7/98), 720 So.2d 134, 138, writ denied, 99-0330 (La.6/18/99), 745 So.2d 617; State v. Major, 96-1214, p. 9 (La.App. 4th Cir.3/4/98), 708 So.2d 813, 818-819, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647. Thus, we are satisfied that there was sufficient evidence to support defendant's conviction for manslaughter, unless the homicide was justifiable because committed in self-defense.
The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. Louisiana Revised Statute 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
However, if a person acts as the aggressor and provokes the situation which ultimately places him in danger, he or she may, under certain circumstances, be precluded from claiming the right to self-defense. Louisiana Revised Statute 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
When a defendant claims self-defense in a homicide case, the State bears the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense. State v. Rosiere, 488 So.2d 965, 968 (La.1986). Thus, the precise issue presented for our review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved beyond a reasonable doubt that the defendant did not act in self-defense.
In this case, the defendant armed himself with a knife before leaving the Colar residence, in obvious anticipation of some kind of confrontation with the victim. No physical confrontation occurred inside the residence and there is no evidence that the defendant was in imminent danger when he armed himself and went outside. Numerous witnesses testified to what went on inside and outside of the Colar residence. No one testified that the victim threatened the defendant with death or great bodily harm. Once outside, the defendant did not try to withdraw from the confrontation. Although there is no unqualified duty to retreat, the possibility of escape is a recognized factor in determining whether or not the defendant had a reasonable belief that deadly force was necessary to avoid danger. State v. Howard, 443 So.2d 632, 638 (La.App. 3rd Cir. 1983), writ denied, 444 So.2d 1215 (La. 1984). Nor did the defendant at any point cry out for assistance, although there were numerous others outside observing the fight.
The physical evidence found at the scene consisted of a kitchen knife, the victim's cap, and an area of scuffed grass and mud. The knife bearing the victim's blood was found at least ten feet away from the area where the major part of the fight and its conclusion apparently occurred. The reasonable inferences from the evidence *205 showed that the victim may have been stabbed at one location and the two men continued to struggle, falling to the ground some distance away. There the victim tried to restrain the defendant by pinning him to the ground, as described by Gerald Colar, until Gregory broke up the fight.
As the triers of fact, the jurors were free to accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 99-0385, p. 9 (La.App. 1st Cir. 11/5/99), 745 So.2d 217, 223, writ denied, 00-0829 (La.11/13/00), 774 So.2d 971. In this case, the jurors obviously did not choose to believe the defendant's claim of self-defense. They may have determined that the aggressor doctrine applied, since the defendant escalated the conflict by arming himself with a knife without having been threatened and before going outside to continue a dispute. Alternatively, they may have determined that the defendant did not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm at the time he stabbed the victim, and did not act reasonably under the circumstances, particularly since the victim was unarmed and the fight was a one-on-one confrontation with many bystanders. Either of these determinations was reasonably supported by the evidence, viewed in a light most favorable to the prosecution. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Glynn, 94-0332, p. 32 (La.App. 1st Cir.4/7/95), 653 So.2d 1288, 1310, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded the State proved beyond a reasonable doubt that the defendant's conduct was not justified.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends the trial judge erred in refusing to permit him to introduce evidence about specific incidents to demonstrate the violent character of the victim and his own state of mind at the time of the offense. At trial, he attempted to adduce testimony about an altercation between the victim and an unrelated third party in January 2000, in which the victim was reportedly the aggressor, as well as evidence of the victim's criminal history.[4]
Evidence of a person's character generally is not admissible to prove that the person acted in conformity with his or her character on a particular occasion. La. C.E. art. 404 A. However, there are several specific exceptions to this general rule. With respect to evidence of the dangerous character of the victim of a crime, such evidence is admissible (1) when the accused offers appreciable evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, or (2) when the accused, relying on the defense of self-defense, establishes (a) a history of assaultive behavior between the victim and the accused and (b) a familial or intimate relationship between the victim and the accused. State v. Rodrigue, 98-1558, pp. 4-5 (La.4/13/99), 734 So.2d 608, 610-611. The domestic violence exception is not applicable in this case. Thus, in order to introduce any evidence regarding the victim's character, it had to first be shown that the victim *206 made some hostile demonstration or overt act at the time of the offense charged. The term "overt act," as used in connection with prosecutions where the plea of self-defense is involved, means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. State v. Edwards, 420 So.2d 663, 669 (La. 1982).
In this case, there was no appreciable evidence to show that the victim initiated the physical confrontation. The fact that the victim, who was unarmed, sought the defendant out to settle a "beef" does not establish that he committed an overt act against the defendant. Indeed, the evidence clearly established that no physical confrontation occurred inside the Colar residence, where the exchange between the defendant and the victim remained strictly verbal. Clearly this would not have suggested to a reasonable man that the unarmed victim had the intent to kill or inflict great bodily harm on the defendant.
While there was evidence that the victim ended up on top of the defendant after the commencement of a physical struggle outside, the victim at that point might well have been reacting to the conduct of the defendant in attacking him with a knife. Thus, the defendant failed to establish the necessary foundation for introducing any evidence of the victim's general reputation for violence, much less specific instances of conduct. Compare State v. Felder, 00-2887, pp. 5-10 (La.App. 1st Cir.9/28/01), 809 So.2d 360, 366-369, writ denied, 01-3027 (La.10/25/02), 827 So.2d 1173 and State v. Jones, 451 So.2d 1181, 1185-1186 (La.App. 1st Cir.1984).[5]
Moreover, even where a proper foundation is laid, the admissibility of a victim's character trait depends on the purpose for which the evidence is offered. Once evidence of an overt act on the part of the victim has been presented, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger which would justify the conduct; and (2) to help determine who was the aggressor in the conflict. State v. Anderson, 550 So.2d 797, 800 (La.App. 2nd Cir.1989), writ denied, 556 So.2d 1260 (La.1990). Only evidence of general reputation, and not specific acts, is admissible in order to show who the aggressor was in the conflict. State v. Boss, 353 So.2d 241, 243 (La.1977). Evidence of prior specific acts of the victim against a third party is inadmissible for this purpose. Jones, 451 So.2d at 1186. When evidence of a victim's dangerous character is offered to explain defendant's reasonable apprehension of danger, such evidence may be introduced to show the accused's state of mind only if it is shown that the accused knew of the victim's reputation at the time of the offense. When such a showing is made, some courts have held that evidence is not limited to general reputation, but may also include evidence of specific acts. See Anderson, 550 So.2d at 800.[6] Other courts have held that, even *207 when offered for this purpose, only specific acts committed against the defendant are admissible. State v. Montz, 92-2073, p. 3 (La.App. 4th Cir.2/11/94), 632 So.2d 822, 825, writ denied, 94-0605 (La.6/3/94), 637 So.2d 499. Here, there was no showing made that the defendant was aware of the victim's criminal record or the prior specific incident of alleged victim aggression sought to be introduced. Accordingly, the trial judge did not err in excluding evidence of the victim's criminal record and specific acts of violence against a third person, offered for the purpose of explaining defendant's state of mind.[7]
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 3
Defendant asserts the trial judge committed reversible error in overruling his objection to statements made during the prosecutor's closing rebuttal argument and in not granting a mistrial. Defendant claims the prosecutor improperly commented on his failure to testify at trial.[8]
Louisiana Code of Criminal Procedure article 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the ... district attorney ..., during the trial or in argument, refers directly or indirectly to:
....
(3) The failure of the defendant to testify in his own defense ....
In State v. Mitchell, 00-1399 (La.2/21/01), 779 So.2d 698, the Louisiana Supreme Court recently reviewed the law relative to granting a mistrial as a consequence of a prosecutorial comment on a defendant's failure to testify at trial. Louisiana Code of Criminal Procedure article 770(3) provides that the trial court shall declare a mistrial when the prosecutor "refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense...." The purpose behind Article 770(3)'s prohibition against such a prosecutorial comment is to protect the defendant's Fifth Amendment right against self-incrimination *208 by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. "Direct" and "indirect" references to the defendant's failure to take the stand are prohibited by Article 770(3). When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence. When the reference to the defendant's failure to take the stand is not direct, the reviewing court will inquire into the remark's intended effect on the jury in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from statements that are not (which are permissible, though not favored). State v. Mitchell, 00-1399 at pp. 4-5, 779 So.2d at 701.
In order to support the granting of a mistrial based on an indirect reference, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying. State v. Smith, 327 So.2d 355, 362 (La. 1975) (on rehearing).
There are indirect references which focus on, or are intended to focus on, a defendant's failure to testify. One such instance is when the defendant is the only witness who can rebut the State's evidence. In such a case, a reference to the State's evidence as uncontroverted focuses the jury's attention on the defendant's failure to testify and warrants a mistrial. See State v. Fullilove, 389 So.2d 1282, 1284 (La.1980) and State v. Perkins, 374 So.2d 1234, 1237 (La.1979). However, there are and can be indirect references which are not intended to focus on a defendant's failure to testify. One such frequently seen instance is a prosecutor's emphasizing that the State's evidence is unrebutted in a situation where there are witnesses other than the defendant who could testify on behalf of the defense, but have not. State v. Smith, 433 So.2d 688, 697 (La.1983).
Another such instance of an indirect reference that does not focus on the defendant's not testifying is where the State points out, in order to explain the State's inability to introduce evidence, that only the defendant knows where a particular piece of crucial evidence is. Mitchell, 00-1399 at pp. 4-6, 779 So.2d at 701-702. In such a case, the jurors are not likely to receive the words of the prosecutor as an invitation to draw an admission of guilt from the defendant's failure to testify, but rather as a reason for why the jury should not penalize the State for its failure to introduce certain evidence. Taken in context, such a comment does not suggest an intent by the prosecutor to focus on the defendant's failure to take the stand.
In this case, as in Mitchell, it is important to understand the context of the prosecutorial remarks in question. Defense counsel, in his closing statement to the jury, outlined the law concerning self-defense, including the element that the defendant must reasonably believe he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save him from that danger. He argued that defendant probably did not want to go outside to fight but went outside because he was ordered to leave the Colar home. He further argued that the victim had a reputation for drinking, drugging, and fighting, and that both the defendant and the victim lived in the community where that reputation was known. He contended that it was prudent, therefore, for defendant to arm himself before going outside, where he stabbed the victim in self-defense. On rebuttal, the prosecutor reviewed defense counsel's argument *209 regarding self-defense. He suggested that the position of the knife, found quite a distance from the victim's cap and the scuffed grass and mud, suggested that the fatal stab wound was inflicted at the beginning of the confrontation, while the men were still standing and before the victim got on top of the defendant on the ground. The prosecutor inferred that the victim was holding the defendant down after being stabbed in order to protect himself. The prosecutor then commented:
Then finally, the defendant's knowledge of dangerous character. Of course we don't have any evidence of that. Not one word about that.
Defendant objected that this constituted a comment on his client's failure to take the stand and testify at trial. The trial judge overruled the objection.
In our view, the comment made by the prosecutor, viewed in context, was not an intentional indirect comment on the failure of defendant to testify at trial that compromised his Fifth Amendment privilege. Rather, we believe that in the context of the argument, the jurors would have regarded it as part of the prosecutor's review of the evidence presented at trial. Although it was the State's burden to prove beyond a reasonable doubt that defendant did not act in self-defense, the State had no means of introducing direct evidence of the negative proposition that defendant did not know of the victim's dangerous character. In our view, the State was entitled to point out that there was no evidence that defendant had knowledge of anything that might have induced a state of mind consistent with the claim of self-defense. Moreover, the particular comment of the prosecutor at issue did not refer directly to the defendant.
Witnesses, other than the defendant, could conceivably have testified about defendant's fearful state of mind and knowledge of the victim's dangerous character based on past violent incidents that the defendant witnessed or claimed to know about, or based on the defendant's conduct and statements at the time of this offense. Most of the witnesses called by the State knew the defendant very well. None indicated that defendant appeared frightened on the night of the homicide or that he did or said anything to indicate that he was aware of the victim's reputation for violent conduct. In sum, the prosecutor's remark did not necessarily refer to an absence of testimony by defendant. Thus, we cannot conclude that the prosecutor's remarks required a mistrial when defendant was not the sole possible source of evidence to establish his knowledge of the victim's character. State v. Triplett, 434 So.2d 1270, 1272-1273 (La.App. 1st Cir.1983).
There is no merit to this assignment of error.

ASSIGNMENTS OF ERROR NUMBERS 4 AND 5
In these related assignments of error, defendant contends his habitual offender sentence is excessive. He claims the trial judge abused his discretion in choosing the sentence imposed and in failing to reconsider his sentence, in view of his minor criminal history and the circumstances of the manslaughter offense. Defendant filed motions to reconsider both the original sentence imposed for his manslaughter conviction and the subsequent habitual offender sentence. Both were denied.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. *210 State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La. 1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
The trial court has wide, although not unbridled, discretion in the imposition of a sentence within statutory limits. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence will be determined to be excessive if it is grossly disproportionate to the crime, or is nothing more than the needless imposition of pain and suffering. The determination turns upon the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate that it shocks our sense of justice. State v. Waguespack, 589 So.2d 1079, 1086 (La.App. 1st Cir.1991), writ denied, 596 So.2d 209 (La.1992).
A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. Waguespack, 589 So.2d at 1086. A sentence imposed within the statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
In this case, when the trial judge imposed the original manslaughter sentence, he considered the criteria set forth in La. C.Cr.P. art. 894.1. He also took into consideration defendant's criminal history, including both offenses against property and aggravated offenses against the person.[9] The trial judge expressed his view that there was an undue risk that during any suspended or probated sentence, another crime would be committed and that any lesser sentence than the one imposed would deprecate the seriousness of the offense. He particularly noted:
The offender knowingly created a risk of death and great bodily harm in the commission of the crime in that he armed himself before leaving the residence, knowing that he was going outside to engage in some kind of encounter with the victim and, of course, that he did, in fact, use a dangerous weapon which resulted in the death of the victim.
The trial judge imposed a sentence of eighteen years imprisonment at hard labor. The maximum sentence that could have been imposed for manslaughter was forty years at hard labor. La. R.S. 14:31 B. Subsequently defendant was adjudicated a second felony offender. The original sentence was vacated, and the trial judge accepted evidence as to the appropriate habitual offender sentence to impose. The State introduced victim impact statements from the victim's family. Defendant did not present any evidence or make any argument in mitigation. As a second felony offender, defendant could have received a sentence of not less than one-half the longest term of imprisonment for manslaughter, and not more than twice the longest term prescribed. La. R.S. 15:529.1 A(1)(a). Since the statutory maximum term for manslaughter was forty years, defendant was exposed to a term of twenty to eighty years imprisonment for his habitual offender sentence. The trial judge imposed a sentence of forty years at hard *211 labor. He indicated that he relied upon, among other things, his original reasons for sentencing, the victim impact statements of the victim's relatives, and defendant's prior history with law enforcement, including the circumstances of his conviction for illegal possession of stolen property, the revocation of his probation for that offense, and his violations of parole through cocaine abuse.
On appeal, defendant's only argument in support of his claim that the sentence imposed was excessive is that his prior criminal history is minor and that he acted in response to the physical threat presented by the victim. However, the jury rejected the defense of justification and the State presented evidence of numerous criminal offenses, including aggravated offenses against the person. After considering the circumstances of the instant offense and the reasons for sentencing given by the trial judge, we find no abuse of discretion in the sentence imposed. The trial judge adequately considered the sentencing guidelines and there was a sufficient factual basis in the record for the sentence imposed, which does not shock our conscience.
These assignments of error are without merit.

DECREE
For the foregoing reasons, defendant's conviction, habitual offender adjudication, and sentence are affirmed.
CONVICTION, HABITUAL OFFENDER ADJUDICATION AND SENTENCE AFFIRMED.
NOTES
[1] The Information to Establish Habitual Offender Status alleged that on August 26, 1991, defendant was convicted and sentenced for felony possession of stolen property over $500.00 in Docket No. 130,545 on the docket of the Sixteenth Judicial District Court for the Parish of St. Mary. The State introduced evidence of the defendant's prior guilty plea, the transcript of the plea colloquy, and evidence of defendant's identity. On appeal, defendant does not contest the sufficiency of the evidence presented to support the habitual offender adjudication.
[2] Defendant was granted leave to file an out-of-time appeal on January 7, 2003. We dismissed the appeal as untimely in an unpublished action. State v. Loston, 02-2595 (La. App. 1st Cir. 1/27/03). Thereafter, defendant filed an application to the trial judge for post conviction relief and an out of time appeal was granted pursuant thereto on April 17, 2003.
[3] The testimony of each of the three men involved in taking the victim home established that the victim did not sustain any additional injuries subsequent to his fight with the defendant.
[4] The trial judge ruled that, although the defendant would be allowed to prove the general reputation of the victim, specific instances of the victim's conduct could not be introduced if they did not involve the defendant.
[5] We note that the trial judge did allow the introduction of general reputation evidence regarding the victim's character and the defendant did, through cross-examination of state witnesses, introduce evidence of the victim's general reputation for fighting.
[6] Although many of the cases dealing with this issue were decided prior to the adoption of the Louisiana Code of Evidence, and were decided under former La. R.S. 15:482, the jurisprudence has recognized that the new Code does not appear to change the preexisting law on this point. State v. Gantt, 616 So.2d 1300, 1305 (La.App. 2nd Cir.), writ denied, 623 So.2d 1302 (La.1993).
[7] Louisiana Code of Evidence article 405 describes methods of proving character, where evidence of a trait of character is admissible. Article 405 A expressly provides the general rule that such evidence may be presented only by testimony as to general reputation. Louisiana Code of Evidence article 405 B describes an exception that permits proof of specific incidents of conduct where the character trait at issue is a specific element of the crime. In this case, the defense of self-defense required proof that defendant acted based on a reasonable fear for his life. The character trait of the victim was not an essential element of the defense of self-defense. Defendant could have established that defense even if the victim had no history of being a dangerous character. See Lori J. Henkel, J.D., Admissibility of Evidence of Pertinent Trait Under Rule 404(a) of the Uniform Rules of Evidence, 56 A.L.R.4th 402 (1987) and Admissibility of Evidence as to Other's Character or Reputation for Turbulence on Question of Self-Defense by One Charged with Assault or Homicide, 1 A.L.R. 3rd 571 (1965) and cases cited therein. See particularly State v. Spinks, 79 Ohio App.3d 720, 607 N.E.2d 1130, 1137 (1992) and State v. Roy, 151 Vt. 17, 557 A.2d 884, 893 (1989). Compare dicta in State v. Carter, 97-2902, pp. 32-33 (La.App. 4th Cir.5/10/00), 762 So.2d 662, 682, writ denied, 00-1598 (La.6/15/01), 793 So.2d 1233, cert denied, 534 U.S. 1116, 122 S.Ct. 926, 151 L.Ed.2d 889 (2002).
[8] Where, as here, defense counsel timely objects to the prosecutor's remarks and his objection is overruled, it is not necessary to move for a mistrial or request other corrective action in order to preserve the right to appellate review. State v. Johnson, 98-281, p. 4 (La.App. 5th Cir.9/29/98), 719 So.2d 1141, 1144.
[9] The State introduced evidence of previous convictions for illegal possession of stolen property, battery, aggravated assault, aggravated battery, and resisting a police officer by fighting.